IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



| | |
|---|---|
| VILLA CAPRI PARTNERSHIP, § | |
| § | |
| Appellant, § | |
| § | |
| JAY S. FICHTNER, § | |
| § | |
| Appellant, § | |
| § | |
| v. § | Civil Action No. 3:04-CV-2249-K |
| § | |
| THOMAS D. POWERS, § | |
| STANDING CHAPTER 13 TRUSTEE, § | |
| § | |
| Appellee. § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Appellants Jay S. Fitchner and Villa Capri Partnership's appeal of the United States Bankruptcy Court's order entered May 26, 2004, which allowed the Chapter 13 trustee to disburse the funds currently in the registry of the court to Appellants' creditors on or after June 30, 2004. For the reasons that follow, the order of the United States Bankruptcy Court is **affirmed**, because Appellant's appeal of the bankruptcy court's prior order determining ownership of the disputed funds is untimely and is barred by the doctrine of *res judicata*. Additionally, the court holds that the funds were not abandoned by the Trustee, and that the Trustee had standing to object to Appellant's motion to recover the funds.

I.   **Factual and Procedural Background**

On May 3, 1996, Debtor Jay S. Fitchner ("Appellant") filed a voluntary Chapter 13 bankruptcy petition. On May 23, 1996, Appellant filed his original Schedules A-J. Appellant's Schedule A listed approximately $882,000 in non-homestead real property. Appellant's Schedule B listed his interest in the Villa Capri partnership ("the Partnership") of $160,000. The Partnership owned a shopping center located in Frisco, Texas. Appellant did not claim his interest in Villa Capri or his non-homestead property as exempt on Schedule C.

On December 10, 1996, Northern Trust Bank ("Northern Trust") filed two proofs of claim in the total amount of $235,000. In 1998, the Partnership sold the shopping center, and Appellant's portion of the proceeds of that sale was delivered to the Chapter 13 Trustee Thomas D. Powers ("Trustee"), who distributed them to Northern Trust, Appellant's principal creditor. However, at the closing of the sale transaction a dispute arose between the Partnership and the attorney for Northern Trust, who claimed that the title company ("Chicago Title") should pay it a legal fee out of the sale proceeds. This controversy led to a state court lawsuit brought by the Villa Capri partnership against various parties, including Northern Trust's attorney and Chicago Title.

On October 26, 1998, Appellant filed an objection to the claim of Northern Trust, and the bankruptcy court entered an order on December 2, 1998 finding "that the funds currently being held by Chicago Title Company from the sale of the Villa

Capri Partnership Assets are property of the debtor's bankruptcy estate." The December 2, 1998 order further directed that to the extent those funds were being held or withheld by any party, those funds were to be placed in the registry of the court. In compliance with this order, Chicago Title deposited $8,796.53 in the registry of the court on January 21, 1999. The bankruptcy court's December 2, 1998 order was never appealed.

On March 5, 1998, Appellant's Chapter 13 plan was confirmed with a 100% dividend to unsecured creditors. On June 11, 2001, Appellant's Chapter 13 bankruptcy was dismissed with prejudice to refiling for 180 days. On November 1, 2001, a Trustee's Final Report and Account was filed showing that Appellant did not pay a 100% dividend to all unsecured creditors, as contemplated by the bankruptcy court's March 5, 1998 confirmation order.

On June 20, 2002, Appellant filed a Post-Dismissal Motion to Disburse Funds held in the registry of the court. The Trustee filed a response to Appellant's motion claiming an interest in the funds placed in the registry of the court. The bankruptcy court ruled on the motion on May 26, 2004, holding that it was bound by its December 2, 1998 order finding that the funds were the property of the bankruptcy estate. The bankruptcy court further noted that the December 2, 1998 order was not appealed. The bankruptcy court's May 26, 2004 order thus directed that the funds being held in the registry of the court be disbursed by the Trustee on or after June 30, 2004, and that Appellant would be permitted to submit proof of satisfaction of claims that had occurred

since the bankruptcy case was originally filed. The Trustee states in its brief that it has received no such documentation from Appellant. Appellant does not claim that he submitted such proof. Instead, Appellant argues that he should receive the funds because no creditor or other interested party has objected to his attempt to claim the funds.

II.     **Standard of Review**

The bankruptcy court's factual findings are reviewed under the clearly erroneous standard, while any questions of law are reviewed *de novo*. Fed. R. Bankr. P. 8013; *In re Whitaker Construction Co., Inc.*, 411 F.3d 197, 201 (5th Cir. 2005); *In re Chesnut*, 311 B.R. 446, 449 (N.D. Tex. 2004).

III.    **Discussion**

A.      **Issue No. 1**

Appellant presents the following question as his first issue on appeal:

> Were transactions and a state court action initiated by Villa Capri, not by debtor, which arose out of Villa Capri's sale of partnership property, a "related proceeding" and thus outside the jurisdiction of the bankruptcy court, and did the court err in directing disputed proceeds of the sale, not part of Debtor's Partnership interest, to be deposited in the registry of the U.S. District Court?

In this issue, Appellant asserts that the bankruptcy court had no jurisdiction to order in December 1998 that the funds being held by Chicago Title that were in controversy in the underlying state court litigation brought by Villa Capri partnership were the property of Appellant's bankruptcy estate.

4

The order Appellant now complains of was entered on December 2, 1998. If the bankruptcy court had no jurisdiction to enter such an order, Appellant should have timely appealed from that order. Under the applicable rule, Appellant had 10 days to file his notice of appeal. Fed. R. Bankr. P. 8002(a); *In re Don Vicente Macias, Inc.*, 168 F.3d 209, 210 (5th Cir.), *cert. denied*, 528 U.S. 986 (1999). Because Appellant did not timely appeal from the bankruptcy court's December 2, 1998 order, this court lacks jurisdiction to consider that appeal here. *See In re CPDC Inc.*, 221 F.3d 693, 698 (5th Cir. 2000) (failure to file timely notice of appeal deprives the district court of jurisdiction to consider the appeal); *Don Vincente*, 168 F.3d at 211 (same). Accordingly, Appellant's appeal of the bankruptcy court's December 2, 1998 order must be, and is, **dismissed.**

The court further holds that even if it did have jurisdiction to entertain Appellant's appeal of the bankruptcy court's December 2, 1998 order, the appeal would be barred by the doctrine of *res judicata*. The Fifth Circuit's test for claim preclusion is that 1) the parties be identical in both suits; 2) a court of competent jurisdiction rendered the prior judgment; 3) there was a final judgment on the merits of the previous decision; and 4) the plaintiff raises the same cause of action or claim in both suits. *In re Super Van Inc.*, 92 F.3d 366, 370 (5th Cir. 1996).

The court finds that because Appellant was the debtor and also represented Villa Capri partnership as its general partner in the underlying bankruptcy proceeding, the

5

first element of the above test has been satisfied. Additionally, the court finds that the second element has been met, since the prior judgment regarding ownership of the funds was entered by the United States Bankruptcy Court for the Northern District of Texas, a court of competent jurisdiction. There was a final judgment on the merits of the bankruptcy court's earlier decision, because no appeal was taken from its December 2, 1998 order. Finally, it is clear that Appellant seeks to re-litigate here the same claims raised below in the bankruptcy court, which were disposed of by that court in its prior order on December 2, 1998. Accordingly, the court holds that *res judicata* further bars Appellant's appeal of the bankruptcy court's December 2, 1998 order.

### B.     Issue No. 2

Appellant has stated his second issue on appeal as follows:

> Does the Debtor have a right to the funds that were deposited in the registry of the court, because they were abandoned by the Standing Chapter 13 Trustee, and rightfully become [sic] Debtor's property, when the Standing Chapter 13 Trustee failed to administer the funds during Debtor's Chapter 13 proceeding and after the proceeding was dismissed, it not only neglected to administer the funds but failed to account for them, clearly demonstrating that the value of the funds and their benefit to the estate were inconsequential and burdensome to administer?

Appellant argues that because the Chicago Title funds remained on deposit in the registry of the court after the closing of his Chapter 13 bankruptcy case, they were abandoned by the Trustee. After Appellant filed his motion to recover the funds in June 2002, the Trustee responded and claimed an interest in the funds.

The trustee's objection indicates that the Trustee did not intend to abandon the funds. Furthermore, section 554(c) of the Bankruptcy Code states that estate property left unadministered at the time of the closing of the bankruptcy case is abandoned "unless the court orders otherwise." 11 U.S.C. § 554(c). Here, the bankruptcy court's order of May 26, 2004 reaffirmed its earlier determination that the Chicago Title funds were property of the bankruptcy estate that must be distributed to creditors. Thus, those funds were not abandoned under section 554(c). Additionally, the bankruptcy court correctly held that it was bound by its prior ruling that the funds were the property of the estate. Therefore, the bankruptcy court did not err in finding that the Chicago Title funds were the property of the bankruptcy estate and ordering that they be disbursed by the Trustee.

### C.    Issue No. 3

Appellant's third issue on appeal is:

> Does the Standing Chapter 13 Trustee have standing to object to Villa Capri's motion to distribute court registry funds, since the Chapter 13 proceeding closed when the Trustee filed a final accounting on November 1, 2001, was discharged and relieved of its bond, and since such time has not sought reinstatement or re-appointment nor has it become re-bonded?

Here, Appellant argues that the Trustee had no standing to object to his request that the Chicago Title funds be released to him.

When Appellant filed his Post-Dismissal Motion to Disburse Funds, he effectively reopened his bankruptcy case, as he was seeking relief by asking the bankruptcy court

7

to distribute property of the estate to him. 11 U.S.C. § 350(b). The Trustee is the standing trustee for Chapter 13 bankruptcy cases in this district, as authorized by 28 U.S.C. § 586(b). Therefore, when Appellant reopened his bankruptcy case, the Trustee was reappointed to serve and perform his statutory duties. The Trustee had standing to object to Appellant's attempt to obtain the Chicago Title funds post-dismissal, and the bankruptcy court did not err by permitting the Trustee to appear and object.

IV.   **Conclusion**

For the reasons stated herein, Appellant's appeal of the bankruptcy court's December 2, 1998 order is **dismissed,** and the order of the bankruptcy court entered May 26, 2004 is hereby **affirmed.** The Trustee shall disburse the Chicago Title funds currently held in the registry of the court to Appellant's creditors in accordance with Appellant's confirmed plan. The clerk is hereby directed to prepare, sign and enter the judgment pursuant to Bankruptcy Rule 8016(a).

**SO ORDERED.**

Signed July August 1st, 2005.

ED KINKEADE
UNITED STATES DISTRICT JUDGE